IN RE APPEAL BY McCRARY

[112 N.C. App. 161 (1993)]

IN THE MATTER OF THE APPEAL BY SUE S. McCRARY FROM A
DECISION OF THE NORTH CAROLINA INSURANCE UNDERWRITING
ASSOCIATION AND THE NORTH CAROLINA COMMISSIONER OF
INSURANCE

No. 9210SC656

(Filed 5 October 1993)

1. **Administrative Law and Procedure § 65 (NCI4th)— review
of agency decision—standard of review—questions presented
determinative**

The standard of review which should be employed in
reviewing an agency decision depends upon the nature of the
alleged error: (1) if appellant argues the agency's decision was
based on an error of law, then *de novo* review is required;
(2) if appellant questions whether the agency's decision was
supported by the evidence or was arbitrary or capricious, then
the reviewing court must apply the whole record test; (3) but
on a subsequent appeal to the Court of Appeals of the trial
court's order affirming the agency's decision, the review is
limited to a consideration of whether the court committed
any error of law.

Am Jur 2d, Administrative Law § 730.

2. **Insurance § 911 (NCI4th)— insurance coverage voided ab
initio—material misrepresentations in application**

In voiding, ab initio, insurance coverage on petitioner's
beach property, the Commissioner of Insurance did not err
by failing to apply a "fraud" standard since (1) N.C.G.S.
§ 58-3-10 does not require a showing of fraud in order for
an insurer to avoid a policy but instead requires a false and
material misrepresentation; (2) the North Carolina Insurance
Underwriting Association did not rely on the defense of fraud
in seeking avoidance; and (3) the Commissioner did not utilize
the defense of fraud in determining that the Association prop-
erly denied coverage.

Am Jur 2d, Insurance §§ 1007, 1013, 1014, 1068, 1069.

3. **Administrative Law and Procedure § 67 (NCI4th)— Insurance
Commissioner's denial of coverage—application of whole record
test by trial court**

The trial court was required to apply the whole record
test in determining whether the Insurance Commissioner's deci-

IN RE APPEAL BY McCRARY

[112 N.C. App. 161 (1993)]

sion to deny coverage was contrary to the evidence presented, and if, after the record was reviewed, substantial evidence supported the agency's ruling, then the agency's ruling must stand.

**Am Jur 2d, Administrative Law § 730.**

4. **Insurance § 911 (NCI4th)— order voiding insurance policy ab initio — whole record standard of review properly utilized and applied by trial court**

The trial court properly utilized and applied the whole record standard of review in affirming the Insurance Commissioner's order voiding, *ab initio*, a policy of insurance on petitioner's beach property where there was substantial evidence in the record that petitioner made a false statement that she resided at her beach house when in fact it was uninhabitable, and the misrepresentations were made in response to written questions on the insurance application.

**Am Jur 2d, Insurance §§ 1007, 1013, 1014, 1068, 1069.**

5. **Insurance § 911 (NCI4th)— fire insurance — beach house — occupancy questions unanswered or incomplete — occupancy requirement not waived**

There was no merit to petitioner's contention that, even if answers to the vacancy and occupancy portions of her insurance application were unanswered or insufficiently answered, the Underwriting Association waived the right to full disclosure because it issued a policy of insurance on petitioner's beach house without further inquiry, since under procedures approved by the Commissioner of Insurance, a physical inspection was not required and the insurer could depend on forms submitted by its agent to determine if the property was insurable, and the Association, which never sent an agent to inspect the beach house, could not be chargeable with knowledge of the house's condition and thus did not waive any pertinent clauses.

**Am Jur 2d, Insurance §§ 1007, 1013, 1014, 1068, 1069.**

Appeal by petitioner from judgment entered 20 April 1992 by Judge Narley T. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 3 June 1993.

IN RE APPEAL BY McCRARY

[112 N.C. App. 161 (1993)]

*Shipman & Lea, by Gary K. Shipman and Jennifer L. Umbaugh, for petitioner-appellant.*

*Hunton & Williams, by Walton K. Joyner and Christopher G. Browning, Jr., for appellee.*

JOHN, Judge.

Petitioner Sue S. McCrary contends the trial court erred by affirming an order of a Deputy Commissioner of Insurance (Commissioner) which voided, *ab initio*, insurance coverage on her property at Topsail Beach, North Carolina. We disagree.

On or about 24 September 1990, Donnie Hamm (Hamm), a licensed State Farm Insurance Agent, was assisting petitioner in obtaining insurance coverage for her beach house at Topsail Beach, North Carolina. Hamm and petitioner submitted an insurance application to the North Carolina Insurance Underwriting Association (Association), which was entitled "SUPPLEMENTAL APPLICATION—PRODUCER'S INSPECTION REPORT."

On this application form were questions addressing occupancy and vacancy of the property. These inquiries and petitioner's responses thereto were as follows:

4. OCCUPANCY (SHOW EACH TYPE OF OCCUPANT IN BUILDING) *used as seasonal dwelling for single family*

IF HABITATIONAL, SHOW NUMBER OF FAMILIES: _1_

IF VACANT: ___ ATTACH VACANCY QUESTIONNAIRE

No "Vacancy Questionnaire" was ever attached to the application or sent to the Association.

At the time petitioner submitted the insurance application, the house had not been occupied for at least one year and nine months due to damage from arson on two previous occasions; no electricity or water served the house; the beds, interior panelling, and sheetrock were gone; and the ceilings had been removed. Although petitioner was conducting renovations to the property, it would not have been ready for occupancy until approximately May or June, 1991.

On 26 September 1990, the Association accepted petitioner's property as an insurable risk. The property was subsequently destroyed by fire on or about 30 October 1990.

After the fire, petitioner filed a .claim with the Association. On the basis of discrepancies between petitioner's representations and the actual condition of the house at the time the insurance application was submitted, the Association voided petitioner's insurance coverage *ab initio* for false and material representations. Petitioner appealed to the Commissioner of Insurance who upheld the Association's actions. Petitioner then appealed to the Superior Court which affirmed the Commissioner's decision.

## I.

[1] Petitioner initially contends the standard of judicial review to be applied in reviewing the Commissioner's decision is *"de novo"* as opposed to the "whole record" test. Petitioner's argument is misdirected.

As a preliminary matter, since the present case concerns both (1) an appeal to the Superior Court of the Commissioner's order and (2) the subsequent appeal to this Court, we find it helpful to elaborate upon the pertinent review procedures applicable at each stage of the appeals process.

The Department of Insurance is a state agency and as such is subject to the Administrative Procedure Act (APA), N.C.G.S. §§ 150B-1 to -52 (1991). *N.C. Reinsurance Facility v. Long*, 98 N.C. App. 41, 44, 390 S.E.2d 176, 178 (1990). The APA provides:

> Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided by another statute, in which case the review shall be under such other statute.

G.S. § 150B-43. While N.C.G.S. § 58-2-75 (1991) also provides for judicial review of a decision of the Commissioner, this Court has determined G.S. § 150B-51 of the APA to be controlling. *Reinsurance Facility v. Long*, 98 N.C. App. at 46, 390 S.E.2d at 179. However, "[t]o the extent that G.S. § 58-2-75 adds to and is consistent with [the APA], we will proceed by applying the review standards articulated in both statutes." *Id.* at 46, 390 S.E.2d at 179.

The APA delineates the appropriate *scope* of judicial review of a final agency decision. A reviewing court may modify or reverse

an agency's decision if the substantial rights of the petitioner may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(4) Affected by . . . error of law;

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or

(6) Arbitrary or capricious.

G.S. § 150B-51(b).

The proper *standard of review* under this statute depends upon the issues presented on appeal. *Walker v. N.C. Department of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). If appellant argues the agency's decision was based on an error of law, then *"de novo"* review is required. *Id.* at 502, 397 S.E.2d at 354. If, however, appellant questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the "whole record" test. *Id.* A reviewing court *may even utilize more than one standard of review* if the nature of the issues raised so requires. *See Ellis v. N.C. Crime Victims Compensation Comm.*, 111 N.C. App. 157, 162, 432 S.E.2d 160, 164 (1993).

The aforementioned principles apply to the *initial appeal of the agency's decision*. A *subsequent* appeal *to this Court* of *a trial court's order affirming the agency's decision* presents a different question. Under G.S. § 150B-52, our review of a trial court's order is the same as in any other civil case—consideration of whether the court committed any error of law. *In re Kozy*, 91 N.C. App. 342, 344, 371 S.E.2d 778, 779-80 (1988), *disc. review denied*, 323 N.C. 704, 377 S.E.2d 225 (1989). Thus, since the questions initially addressed to the trial court are limited by G.S. § 150B-51(b), our task is to determine whether that court committed any error of law based upon a failure to apply properly the review standards set forth in G.S. § 150-51(b). *Sherrod v. N.C. Department of Human Resources*, 105 N.C. App. 526, 530, 414 S.E.2d 50, 53 (1992); *In re Kozy*, 91 N.C. App. at 344, 371 S.E.2d at 780. However, in instances where the trial court should have utilized *de novo* review, this Court will directly review the agency's decision under a *de novo* review standard. *Brooks v. Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988).

Under the aforementioned principles, therefore, the task of this Court is twofold: (1) determine the appropriate standard of review and, when applicable, (2) determine whether the trial court properly applied this standard. *See Wiggins v. N.C. Department of Human Resources*, 105 N.C. App. 302, 306, 413 S.E.2d 3, 5 (1992).

## II.

As previously discussed, the standard of review which should be employed in reviewing an agency decision depends upon the nature of the alleged error. *Walker v. N.C. Department of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). In the case *sub judice*, petitioner contends the Commissioner's decision to deny coverage was both (1) contrary to the law and (2) contrary to the evidence presented.

## A.

[2]   In arguing the Commissioner's decision was *contrary to law*, petitioner advances a single argument; she maintains the Commissioner did not properly interpret the term "fraudulent" as contained in N.C.G.S. § 58-3-10 (1991). Incorrect statutory interpretation by an agency constitutes an error of law and allows this Court to apply *de novo review. Brooks v. Rebarco, Inc.*, 91 N.C. App. 459, 464, 372 S.E.2d 342, 345 (1988). We are not persuaded by petitioner's contention.

G.S. § 58-3-10 provides:

All statements or descriptions in any application for a policy of insurance, or in the policy itself, shall be deemed representations and not warranties, and a representation, unless material or fraudulent, will not prevent a recovery on the policy.

Petitioner insists this statute requires a showing of fraud, *i.e.*, a false representation of a material fact, reasonably calculated and intentionally made to deceive, which does deceive, causing injury thereby. *Shreve v. Combs*, 54 N.C. App. 18, 21, 282 S.E.2d 568, 571 (1981). In other words, petitioner argues only a fraudulent misrepresentation can void a policy *ab initio*, and therefore the Commissioner erred in failing to consider whether her actions were "fraudulent" under the statute.

Petitioner's argument misses the mark. Under G.S. § 58-3-10, an insurer may avoid the policy if the insured makes a representa-

tion which is both (1) *false* and (2) *material*; the misrepresentation *need not be fraudulent.* "If the representation is material and false, it is not necessary for avoidance of the policy that the misrepresentation be intentional." *Tedder v. Union Fidelity Life Ins. Co.,* 436 F.Supp. 847, 849 (E.D.N.C. 1977) (*construing* former N.C.G.S. § 58-30 which is identical to present G.S. § 58-3-10); *see also Cockerham v. Pilot Life Ins. Co.,* 92 N.C. App. 218, 220, 374 S.E.2d 174, 176 (1988).

A review of the record reveals the Association, in seeking avoidance of the policy, at all times relied upon the defense of *material* misrepresentation under G.S. § 58-3-10. Furthermore, while the Commissioner's order does not specifically cite the statute, it tracks the language of G.S. § 58-3-10 and concludes petitioner's application "contained a misrepresentation of material fact." While not necessary, we also note the superior court "examined . . . the [b]riefs and heard the arguments of counsel," yet made no reference to fraud in its order, thus suggesting this defense was neither advanced at the trial level nor relied upon by the trial court in affirming the Commissioner's decision. *See Cellu Products Co. v. G.T.E. Products Corp.,* 81 N.C. App. 474, 477-78, 344 S.E.2d 566, 568 (1986) (appellate court may only pass upon questions presented and ruled upon by lower courts). We thus conclude the Commissioner did not err by failing to apply a "fraud" standard since (1) G.S. § 58-3-10 does not require a showing of fraud in order for an insurer to avoid a policy; (2) the Association did not rely on the defense of fraud in seeking avoidance; and (3) the Commissioner did not utilize the defense of fraud in determining the Association properly denied coverage.

### B.

[3] Petitioner also argues the Commissioner's decision to deny coverage was contrary to the evidence presented. Resolution of this issue must be decided by application of the "whole record" test. *Walker v. N.C. Department of Human Resources,* 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990).

The "whole record" test does not allow the reviewing court (here, the superior court) to substitute its judgment for the agency's as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo. Thompson v. Wake County Board of Education,* 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). However, "it does require the court to take into account both the evidence justi-

fying the agency's decision and the contradictory evidence from which a different result could be reached." *Lackey v. N.C. Department of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). Pursuant to this standard, all the competent evidence is to be examined for a determination of whether the administrative agency's decision is supported by substantial evidence. *Rector v. N.C. Sheriffs' Education and Training Standards Commission*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and is more than a scintilla or a permissible inference." *Wiggins v. N.C. Department of Human Resources*, 105 N.C. App. 302, 306, 413 S.E.2d 3, 5 (1992). If, after all the record has been reviewed, substantial evidence supports the agency's ruling, then the agency's ruling must stand. *Community Savings & Loan Ass'n v. N.C. Savings & Loan Commission*, 43 N.C. App. 493, 497-98, 259 S.E.2d 373, 376 (1979).

With these principles in mind, we turn to the questions of whether the trial court (1) utilized and (2) properly applied the "whole record" standard of review. *See Sherrod v. N.C. Department of Human Resources*, 105 N.C. App. 526, 530, 414 S.E.2d 50, 53 (1992).

**1.**

[4]  As a preliminary matter, we note plaintiff does not contend the trial court failed to apply "whole record" review; rather her sole argument regarding the applicable standard of review is that this Court should apply "*de novo*" review to all issues on appeal. Having previously rejected that argument, we also note the Superior Court's order enumerates it "examined the transcript and the record in this matter and . . . examined the Briefs and heard the arguments of counsel for Petitioner and Respondent," and specifies it "Finds as a Fact that the . . . Order of the Commissioner . . . is supported by substantial evidence . . . ." This indicates the Superior Court *utilized* the appropriate standard of review, and, there being no allegation to the contrary, we determine it did.

**2.**

We further conclude the Superior Court *properly applied* the "whole record" test in affirming the Commissioner's order. The Commissioner denied coverage on the basis of petitioner's misrepresentation of a material fact. Under N.C.G.S. § 58-3-10, an

insurance policy may be avoided if the insured makes a representation which is both (1) *false* and (2) *material. See* discussion of *Tedder v. Union Fidelity, supra.*

There is substantial evidence of record to support the Commissioner's decision that petitioner made a *false* statement on her application of insurance. Petitioner's affirmation (on the insurance application) that the beach house was "used as seasonal dwelling for single family" can only be read, in conjunction with her leaving the "vacancy" question blank and failing to prepare and forward a "vacancy questionnaire," as a declaration the house was inhabited on a regular basis. Yet, by petitioner's own admission (during the hearing before the Commissioner), the house could not be inhabited in 1990, was unoccupied in 1989 and 1990, and was "completely without anybody in it since about 1985 or 1986." Nonetheless, Hamm testified that when assisting petitioner with the insurance application, he asked her, "[d]o you stay there?" and she responded "yes." At another point, Hamm testified he asked petitioner, "[d]o you stay down there?" and she replied "yes." Furthermore, there was no electricity or water serving the house; the beds, interior panelling, and sheetrock were gone; and the ceilings removed. A house physically incapable of being occupied cannot be "used as seasonal dwelling for single family" or be "habitational" for one family. Thus, substantial evidence supports the Commissioner's finding of *falsity.*

There is also substantial evidence of record to support the Commissioner's finding of a *material* false statement. The test for materiality is relatively simple. "[E]very fact untruly asserted or wrongfully suppressed must be regarded as material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the degree and character of the risk, or in fixing the rate of premium." *Wells v. Jefferson Standard Life Ins. Co.*, 211 N.C. 427, 429, 190 S.E. 744, 745 (1937). This test is a subjective one. *Goodwin v. Investors Life Ins. Co. of North America*, 332 N.C. 326, 332, 419 S.E.2d 766, 769 (1992). The determinative question is whether the insured's false answer would have influenced the insurance company in agreeing to accept the risk. *Id.* Furthermore, where misrepresentations are made in the form of written answers to written questions, the misrepresentations "are deemed to be material." *Tolbert v. Mutual Benefit Life Ins. Co.*, 236 N.C. 416, 419, 72 S.E.2d 915, 917 (1952).

In the case *sub judice*, the misrepresentations were made in response to written questions on the insurance application, thereby satisfying the test for materiality under *Tolbert*. Testimony before the Commissioner further indicates the materiality of the statements. Corliss Battle, an underwriter, testified had the Association known the condition of the building it would never have agreed to insure the property. Donnie Hamm, petitioner's own insurance agent, also testified that extended periods of vacancy are critical matters to insurance companies in underwriting insurance. Applying the standards announced in both *Tolbert* and *Goodwin*, we conclude substantial evidence supported the Commissioner's finding of *materiality*.

Because (1) substantial evidence in the record supports the Commissioner's findings regarding material misrepresentations, and because (2) these findings in turn support the Commissioner's conclusion affirming the Association's denial of insurance coverage, we hold the trial court committed no error by affirming the Commissioner's decision.

### III.

[5] Petitioner lastly argues even if the answers to the occupancy and vacancy portions of the application were unanswered or insufficiently answered, the Association has *waived* the right to full disclosure because it *issued* the policy without further inquiry. In addition, petitioner insists the Association was put on notice there were periods of time when the property would be vacant because she used the term "seasonal dwelling", and thus the Association *waived* any objections it had with respect to the condition of the property. However, these contentions are not properly before this Court, and we therefore decline to address them.

Appellate review is limited to consideration of those assignments of error set out in the record on appeal. N.C.R. App. P. 10(a); *Watson v. N.C. Real Estate Commission*, 87 N.C. App. 637, 639, 362 S.E.2d 294, 296 (1987), *disc. review denied*, 321 N.C. 746, 365 S.E.2d 296 (1988). No assignment of error raises the issue of waiver. Furthermore, upon examination of the record, we find nothing to indicate the question of waiver was raised in the trial court. "Appellate courts can only judicially know what appears of record . . . and we will not pass upon questions not presented and ruled upon by the [lower] court." *Cellu Products Co. v. G.T.E. Products Corp.*, 81 N.C. App. 474, 477-78, 344 S.E.2d 566, 568 (1986).

Without expressly considering petitioner's waiver contention, we note an insurer waives a policy provision (which would have allowed avoidance of the policy) if at the time the policy is issued, the insurer has knowledge of existing conditions which would otherwise void the policy under the provision's terms. *Winston-Salem Fire Fighters Club, Inc. v. State Farm Fire & Casualty Co.*, 259 N.C. 582, 585, 131 S.E.2d 430, 432 (1963). Under procedures approved by the Commissioner of Insurance in 1985, a physical inspection of habitational insurance risks is not required; if the producer (here, the insured's agent) submits a properly completed Producer's Supplemental Application-Inspection Report, an insurer is permitted *to use the form to determine* if the property is insurable. In the case *sub judice*, the petitioner and her agent submitted a Supplemental Application regarding the property in question. Accordingly, since no agent of the Association ever visited petitioner's beach house, the Association cannot be chargeable with *knowledge* of the house's condition and thus did not waive any pertinent clauses. *See Firefighters Club*, 259 N.C. at 586, 131 S.E.2d at 433 (absent knowledge of vacancy, there can be no waiver of policy provisions relating to vacancy).

For the foregoing reasons, the judgment of the lower court is affirmed.

Affirmed.

Judges WELLS and COZORT concur.